Filed 3/16/22  P. v. Ayala CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059900 |
| v. | (Super. Ct. No. 09CF2225) |
| OIRAM ROMAN AYALA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Matthew S. Anderson, Judge.  Affirmed.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Alan L. Amann and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

In 2010, appellant Oiram Roman Ayala was sentenced to life in prison without parole for his part in two special circumstance gang murders. He contends the trial court erred in denying his recent petition for resentencing under Penal Code section 1170.95.[1] However, because the jury found appellant either personally killed the victims with malice or he aided and abetted the killings with such intent, he is ineligible for resentencing as a matter of law. We therefore affirm the trial court's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, appellant, Juan Roldan and several other members of their gang confronted a rival outfit in a Santa Ana alleyway. After the two groups exchanged insults and gang signs, someone in appellant's group yelled out, "Shoot them already," and several shots rang out in rapid succession.

Two of appellant's rivals suffered fatal headshots, and a third, Fernando Garcia, was shot in the stomach but survived. Garcia initially told the police that Roldan was the shooter, but when investigators interviewed him several months later, he said appellant was the one who pulled the trigger.

Appellant and Roldan were jointly charged with two counts of first degree premeditated murder and one count each of attempted premeditated murder and street terrorism. (§§ 187, subd. (a), 664, 186.22, subd. (a).) The prosecution also alleged a principal in the crimes intentionally discharged a firearm causing death and great bodily injury. (§ 12022.53, subds. (b), (e).) And it alleged as special circumstances that defendants committed multiple murders and that they intended to further the activities of their gang in the process. (§ 190.2, subds. (a)(3) & (a)(22).)

It took the state two trials to win a conviction. In the first trial, the prosecution argued defendants were guilty as actual perpetrators of the murders, or as direct aiders and abettors, but the jury was unable to reach a verdict. In the second trial,

---

[1] All further statutory references are to the Penal Code.

2

the prosecution added a third theory of culpability based on the natural and probable consequences doctrine, and the jury convicted defendants as charged. The trial court sentenced appellant to multiple terms of life without parole on the murder counts, plus concurrent terms on the remaining counts.

We affirmed the judgment on appeal. (See *People v. Ayala* (Jan. 30, 2012, G044395) [nonpub. opn.].) In so doing, we rejected appellant's challenge to the murder counts on the basis there was insufficient evidence to support the natural and probable consequences theory of aiding and abetting. (*Id*. at pp. 4-7.) We also ruled that even if the evidence was insufficient as to that theory, reversal would not be required because there was substantial evidence to support the murder counts based on the prosecution's alternative theories that appellant either perpetrated the murders himself, or he directly aided and abetted them. (*Id*. at p. 8.)

In 2019, appellant petitioned for resentencing pursuant to section 1170.95.[2] After appointing appellant counsel and considering the record of conviction – including our decision on direct appeal – the trial court determined appellant was ineligible for resentencing because in finding the gang special circumstance allegations true, the jury necessarily determined he acted with the intent to kill. Therefore, it denied appellant's petition for failure to present a prima facie case for relief.

## DISCUSSION

Appellant contends the trial court erred in two respects in denying his petition. First, the court placed too much stock in our prior opinion. And second, the court read too much into the jury's true findings on the gang special circumstance allegations. For the reasons explained below, we uphold the court's order.

Appellant's arguments are grounded in Senate Bill No. 1437 (SB 1437), which narrowed the scope of the murder statutes in this state. As illustrated in this case,

_____

[2] Appellant actually filed two petitions. We grant his unopposed request to judicially notice the first one, which is not contained in the appellate record.

California law used to allow a defendant to be convicted of first degree premeditated murder if that offense was the natural and probable consequence of another offense the defendant aided and abetted, even if that other offense – sometimes known as the target offense – was relatively minor. (See *People v. Chiu* (2014) 59 Cal.4th 155, 164.)[3] However, SB 1437 eliminated this theory of liability for the crime of murder by providing that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

SB 1437 also reined in the felony murder rule so that it can only be applied in cases in which the defendant was the actual killer, he aided and abetted the actual killer in the commission of first degree murder, or he was a major participant in the underlying felony and acted in a manner that was recklessly indifferent to human life. (§ 189, subd. (e).) By amending the felony murder rule in this fashion, and abolishing the natural and probable consequences theory of aiding and abetting for the crime of murder, the Legislature intended to ensure the defendant's culpability is commensurate with his conduct and mental state. (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) The upshot of these changes is that outside the amended felony murder rule, which was not implicated in this case, a person cannot be convicted of murder in California unless he or she personally acted with malice, i.e., the intent to kill. (*People v. Gentile* (2020) 10 Cal.5th 830, 847.)

In addition to ushering in these changes, SB 1437 also enacted section 1170.95, which is the procedural mechanism for retroactively challenging a murder conviction that was based on vicarious liability. To obtain relief under that section, the defendant must show 1) he was prosecuted for murder under the felony murder rule or the natural and probable consequences doctrine, 2) he was ultimately convicted of first or

---

[3] Here, the target offense was identified as disturbing the peace for challenging others to fight in public and using offensive words to provoke a violent reaction. (See § 415.)

second degree murder, and 3) and he would not be liable for murder today because of how SB 1437 redefined that offense. (§ 1170.95, subd. (a).)

If the defendant makes a prima facie showing to that effect, the trial court is required to issue an order to show cause and, absent a concession from the People, conduct an evidentiary hearing. (§ 1170.95, subds. (c), (d).) At the hearing, the prosecution must prove beyond a reasonable doubt the defendant is ineligible for resentencing because his conduct did in fact rise to the level of murder as redefined by SB 1437. (*Id*., subd. (d)(3).) Otherwise, the defendant is entitled to vacatur and resentencing pursuant to the terms of section 1170.95.

In deciding whether the petitioner has made a prima facie showing for relief, the trial court may rely on the record of conviction. (*Lewis, supra*, 11 Cal.5th at pp. 970-972.) That doesn't mean the trial court assumes a factfinding role in the proceedings; to the contrary, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id*. at p. 972.) But if the record of conviction contains readily ascertainable information establishing the petitioner is ineligible for resentencing as a matter of law, the trial court may deny his petition without issuing an order to show cause and conducting an evidentiary hearing. (*Id*. at p. 971; *People v. Drayton* (2020) 47 Cal.App.5th 965, 968, 980.)

The record of conviction includes closing arguments, jury instructions, verdict forms and prior appellate opinions in the case. (*Lewis, supra*, 11 Cal.5th at pp. 971-972; *People v. Jenkins* (2021) 70 Cal.App.5th 924.) However, in considering the effect of prior appellate opinions, we must remember their probative value is "case-specific" and they "'might not supply all answers'" to the question of whether the defendant is eligible for resentencing. (*Lewis, supra*, 11 Cal.5th at p. 972, quoting *People v. Woodell* (1998) 17 Cal.4th 448, 457.)

In this case, the first two requirements for establishing a prima facie case for resentencing were clearly met, in that appellant was prosecuted for murder under the

natural and probable consequences theory, and he was ultimately convicted of first degree murder. His case hinges on the third requirement, that he could not be convicted of murder today because of how SB 1437 redefined that offense. That in theory, depends on what the record of conviction reveals about the basis for the jury's verdict and whether the jury found appellant acted with the intent to kill.

During her closing argument, the prosecutor told the jurors they could convict appellant of first degree murder on the basis he personally fired the fatal shots with premeditation and deliberation. That was a plausible theory since the surviving victim Fernando Garcia identified appellant as the shooter. However, the prosecutor did not attempt to sell this theory very hard. In fact, because Garcia initially identified Roldan as the shooter, the prosecutor told the jury she believed Roldan was the actual gunman. Nevertheless, she argued that even if that was the case, appellant was still liable for murder because 1) he directly aided and abetted Roldan in carrying out the shooting, and/or 2) murder was a natural and probable consequence of the targeted crime of disturbing the peace that appellant aided and abetted.

The prosecutor's ensuing discussion of these two theories of vicarious liability was not a model of clarity. However, over the course of her argument, the prosecutor properly noted that direct aiding and abetting required proof appellant shared Roldan's intent to commit the murders. She also correctly explained that under the natural and probable consequences theory, appellant was not only guilty of any crime he aided and abetted, but of any reasonably foreseeable offense stemming from that target offense. Therefore, even if appellant did not act with premeditation or directly aid and abet the shooting, he was still liable for murder so long as that offense was a reasonably foreseeable consequence of the target crime of disturbing the peace.

In the prosecutor's view, that foreseeability requirement was satisfied given the factual circumstances leading up to the shooting. Additionally, the prosecutor told the jury it made sense to hold appellant accountable for murder under the natural and

6

probable consequences theory because, in the context of criminal street gangs, gang members are vicariously liable for the actions of their fellow gang members.

Consistent with the prosecutor's theories, the trial court instructed the jury on first degree premeditated murder, direct aiding and abetting, and the natural and probable consequences theory of aiding and abetting. In addition, the jurors were instructed per CALJIC No. 8.80.1 that if they found appellant guilty of first degree murder, i.e., premeditated murder, they had to determine whether the special circumstance allegations were true. Under that instruction, if the jury did not believe appellant was the actual killer, it could only find the special circumstance allegations true if it was convinced beyond a reasonable doubt that appellant, "with the intent to kill, aided and abetted or assisted any actor in the commission of the murder in the first degree."[4]

In the end, the jury returned a general verdict of guilty on the two counts of first degree murder. And in finding the gang special circumstance allegations true as to those counts, the jury found appellant "intentionally murdered" the victims to further the activities of his gang.

Nevertheless, at the hearing on appellant's petition for resentencing, defense counsel argued there was nothing in the record to prove the jury found appellant personally harbored the intent to kill, so as to render him ineligible for relief under

---

[4] The full instruction was worded as follows: "Unless an intent to kill is an element of a special circumstance, if you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance true. [¶] If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted or assisted any actor in the commission of the murder in the first degree. [¶] You must decide separately as to each of the defendants the existence of nonexistence of each special circumstance in this case. If you cannot agree as to both defendants, but can agree as to one of them, you make your finding as to the one upon which you do agree. [¶] You must decide separately each special circumstance alleged in this case. If you cannot agree as to all of the special circumstances, but can agree as to one or more of them, you must make your finding as to the one or more upon which you do agree. [¶] In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously." (CALJIC No. 8.80.1.)

7

section 1170.95. Counsel maintained there was no way to tell whether the jury made such a finding because, in her closing argument, the prosecutor had conflated the theories of vicarious liability, and she primarily urged the jury to convict appellant based on the natural and probable consequences theory, which was the one theory that did not require appellant to possess the intent to kill.

The trial court recognized the prosecutor was inartful in terms of describing the various theories of culpability to the jury. However, after quoting from the harmless error portion of our opinion on direct appeal, the trial court said that regardless of how the prosecutor argued the case, there was substantial evidence to support the theories that appellant carried out the murders himself, or directly aided and abetted them.

Appellant takes that to mean the trial court applied a substantial evidence standard in denying his petition and found him ineligible for relief simply because it believed there was substantial evidence to support the actual killer and direct aiding and abetting theories of culpability. However, the trial court did not rest its decision on that issue or anything we said in our prior opinion. We know that because immediately after discussing our opinion, the trial court launched into an extensive analysis of the instructions the jury was given, and the findings it made, on the gang special circumstance allegations. Based on *those particular aspects* of the record, the court ruled appellant was ineligible for resentencing because "the jury made a very specific finding that [he] absolutely intended to kill in this case[.]"

We agree. In order to find the special circumstance allegations true, the jury had to find appellant committed the crime of first degree premeditated murder by personally carrying out the killings, or he committed that offense by aiding and abetting the shooter with the intent to kill. (CALJIC No. 8.80.1.) Either way, the jury found appellant acted with malice.

Appellant concedes this is true. However, he insists that, in and of itself, the jury's finding that he harbored the intent to kill is not fatal to his resentencing claim

8

because aside from establishing the requisite mental state, the record must also prove he engaged in the requisite conduct to be guilty of murder following the passage of SB 1437. Appellant is right about that (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815) but he is wrong the record is devoid of proof he engaged in such conduct.

When, as here, the felony murder rule is not in play, the prosecution must prove the defendant either personally killed the victim, or he directly aided and abetted the killing, in order to satisfy the actus reus requirement for murder under SB 1437. Appellant contends the jury instructions on the special circumstance allegations did not convey the proper standard for direct aiding and abetting because they merely required the jury to find he aided and abetted "any actor" in the underlying murder. (See *ante*, p. 7, fn. 4.) In appellant's view, the "any actor" wording is insufficient to prove he directly aided and abetted the murders because SB 1437 amended the felony murder rule to require proof the defendant aided and abetted the "actual killer" in order to invoke that rule when the defendant did not personally kill or was not a major participant in the underlying felony. (§ 189, subd. (e)(2).)

However, this case was not prosecuted under the felony murder rule. And even if SB 1437 required proof the defendant assisted the actual killer in order to establish direct aiding and abetting liability, CALJIC No. 8.80.1 conveyed that requirement to the jurors by explaining that if appellant was not the actual killer, they could only find the special circumstance allegations true as to him if he "aided and abetted or assisted any actor *in the commission of the murder in the first degree*." (See *ante*, p. 7, fn. 4; italics added.) The prosecutor also emphasized this point in her closing argument by telling the jury appellant was liable for murder if he "aided and abetted the person that committed the acts that caused the death. Obviously, the act here is the shooting." So, in finding appellant guilty of special circumstances murder, the jury necessarily determined he either personally killed the victims with the intent to kill, or he aided and abetted the actual killer with such intent to kill. Indeed, as the trial court

9

correctly pointed out, the jury expressly found appellant "intentionally murdered" the victims in rendering its true finding on the gang special circumstance allegations.

Therefore, it doesn't matter that the prosecutor emphasized the natural and probable consequences theory during her closing argument, or that she was somewhat ineloquent in terms of describing the difference between that theory and the direct theory of aiding and abetting at some points in her argument. The fact is, the prosecutor did not mention the natural and probable consequences theory in arguing appellant's culpability on the special circumstance allegations, and the jury instructions on those allegations did not mention that theory either. Instead, the instructions made it clear the allegations only applied if appellant was the person who actually murdered the victims, or he aided and abetted the actual murderer with the intent to kill.

Regardless of which theory it adopted, the jury's true findings on the special circumstance allegations prove appellant's murder conviction would hold up today, even in light of the changes wrought by SB 1437. He is therefore not eligible for resentencing under section 1170.95.[5]

---

[5] In reaching this conclusion, we are aware of this court's recent holding in *People v. Pacheco* (March 9, 2022, G059940) __ Cal.App.5th __[2022 Cal.App.Lexis 192] that a true finding on a gang special circumstance does not, *as a matter of law*, disqualify a defendant from obtaining resentencing relief under section 1170.95. However, CALJIC No. 8.80.1 was not discussed, or apparently given to the jury, in that case. Because the present case rests on the wording of that particular instruction, the two cases are not in conflict.

DISPOSITION

The trial court's order denying appellant's petition for resentencing is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

MARKS, J.*

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11